Curia, -per Butler, J.
The defendant has been allowed all the advantages that are incident to the remedy by a special action on the case. Upon the merits of the case, the verdict of the jury has verified these facts, — that, at the time the defendant issued his warrant, he was aware of the fact that the subject matter of the warrant was wholly without the limits of South Carolina; and, therefore, in no wise within his jurisdiction; and that the arrest *32 and imprisonment'of the plaintiff, were at least illegal, if not wilfully oppressive. If the defendant had commenced and conducted his proceeding under erronious information, or upon such grounds as would have induced a man of ordinary vigilance to believe that the offence was cognizable before the tribunals of South Carolina, he might have been justifiable — not according to strict law as it would be enforced in an action of trespass — but upon the liberal indulgence of courts, in regarding the true merits of a cause as they may be developed in a special action on the case. For, in general, the proposition is true, that when a party has been arrested by the illegal process of a justice, or other inferior officer, issued without competent jurisdiction, he has a right to hold the parties to the proceeding liable for false imprisonment. The exceptions to this general rule will be found to depend, frequently, on the fact whether the officer acted in ignorance of such facts as woi^ld have misled a reasonable man ; or whether he proceeded in spite of such knowledge to assume jurisdiction of the matter. Grice, the justice, in the case before the court, was not deceived or misled, as to the place where the offence charged against the plaintiff had been committed. Of this fact he was fully informed. His justification, if it can be sustained at all, must rest on a mistake of judgment, as to the extent of his judicial powers.
The case being reduced to this simple question, it will be unnecessary to notice many of the topics that have been brought into discussion by the counsel for the defendant. No constitutional question is involved. The defendant did not pretend to act under the constitution, when he arrested the plaintiff, or when he discharged him. The warrant was in common form, to have the party charged apprehended, so as to make him answerable to the tribunals of South Carolina, for an,offence committed in North Carolina. The defendant knew as much before he issued his warrant as afterwards when he made an order to discharge the plaintiff. He knew, from the beginning, that the offence had .been committed without the territorial limits of his jurisdiction. His remark, on the back of the warrant, that he had discharged the parties, on the ground *33 that their offence had been committed in a foreign jurisdiction, might go to shew a covert purpose in not making that fact appear in the original proceedings. In any point of view, it will go conclusively to shew that he was not acting either under the Constitution of the United States, or frpm a regard to the comity of nations. I am, at all times, willing that any party shall avail himself of the constitution, as a shield of protection, when he is entitled to it, by acting in good faith under its authority ; but I am unwilling that it shall be made a cloak to hide reckless ignorance or absurd mistake, much less to disguise the purpose'iof wilful oppression. I will go further, and say that innocent mistakes committed by justices of the peace in reference to matters arising out of the laws of the State from which they derive their authority, may well be justified under the benignant spirit that pervades the judgment of the court, in the case of Reid vs. Hood & Burdine, 2 N. & McC. 168. I am willing to “ be to their faults a little blind,” but not to shut my eyes to the illegality of proceedings originating in' inconsiderate folly, or dictated by the caprice and conceit of a speculative theorist on the comity of nations.
According to the argument of his counsel, Grice contends that he has a right to erect himself into a judicial sentinel, for the purpose of apprehending all persons coming from other States, and to make them answerable for petty misdemeanors, no matter how trivial, which they may have committed before they came to South Carolina. ' That is, he has a right to put them in jail, till his judgment can be enlightened on the merits of their cases. There is something revolting in the extravagance of the proposition. It goes so far as this, that an inferior magistrate, in South Carolina, can assume extra-territorial jurisdiction, so as to take cognizance of matters beyond the limits of the government from which he derived his authority ; or at any rate, that he is not answerable for wilfully assuming jurisdiction to that extent. That he has no such authority is conceded. But the question is, whether he can be justified for a mistaken judgment on the subject. No matter how absurd it may appear to others, it is contended it mav not have *34 appeared so to him; and that he ought not to be made liable for an opinion formed in the discharge of his judicial functions. To this it may be answered, at once, that he never was invested with any judicial authority to decide upon the criminal liabilities of parties originating in North Carolina. His authority, as a justice, was confined to the limits of his own State; and within these limits he has a prescribed jurisdiction, both as to the subject matter and the mode of proceeding. Even here, his jurisdiction is limited and defined, and, in no case, has he a legal right to transcend the limits of his authority. If he were to do so wilfully, and with a corrupt design, he would be answerable, in all cases, for the consequences. But a mistake of judgment, in respect to jurisdiction, honestly made, in the discharge of judicial functions, may be justified, upon the ground that an error of judgment is incident to the position in which he was required to act by the laws of his country.
The whole subject of liabilities growing out of the proceedings and sentences of courts of inferior jurisdiction, is fully and elaborately considered in the case of Gwinne vs. Poole, which may be found reported from 2 Lutw. in the 3d vol. of Phill. on Ev. by C. <fc H. 991. The action was false imprisonment against the party, magistrate and officer, for arresting the plaintiff by a capias issued from an inferior court. It appeared that the cause of action arose out of the territorial jurisdiction of the inferior court, although that fact did not appear in the proceeding. Powell, J. remarks, in the conclusion of his learned judgment: — “But, in the case in question, the court hath jurisdiction of the action, inasmuch as it is an action of debt; and that action being transitory in its nature, arises in point of law in all places, because it is a debt in every place. It is true that it arose not, in fact, within the jurisdiction of the court, which it ought to do, to entitle the court to hold plea thereof; but the judge and officer could not know it, unless by the plaintiff or defendant in the action; and till they know it, the rule shall be in this case, as well as in others, ignorantia facti excusat.” The entire reasoning of his judgment is made to turn on *35 the question of knowledge as to where the cause of proceeding had originated. All inferior magistrates, having a local jurisdiction, are liable or not, with this difference, “where it appears, or may reasonably appear, to them that the cause arose out of their jurisdiction, and yet notwithstanding, they proceed, they are liable to an action ; but it is otherwise where it doth not appear, or cannot reasonably appear, whether the cause arose out of their jurisdiction or not; for then,” says the judge, “I am of opinion that no action will lie against them, unless they proceed after they are informed or know that the cause of action arose out of their jurisdiction.” Let the case before the court be subjected to this test, and how does it stand 'l The defendant knew, and was informed, that the subject matter of his warrant was beyond the jurisdiction of this State. The English Judges were not so tender as to put the justification of the officer on a mistake of judgment, but on a knowledge of facts that should regulate and control his judgment. I think this is the safest and only practicable rule, because it is the only tangible rule. What may be a mistake of judgment, where the jurisdiction is territorial, allows a latitude without limits, and is calculated to make all inferior tribunals irresponsible ; naked usurpation might always cloak itself under mistake. Now, where the magistrate has jurisdiction in part of any matter, either as to the mode of proceeding, or in respect to the subject that may fall within his jurisdiction, as whether it be matter ex contractu or ex delicto, a mistake of judgment may well be made without liability for its consequences. The rule, in such case, arising from the obscurity of the law, or the confusion of the facts, should be error legis excusat, in contradistinction to scientia facti non excusat. In this point of view, the case of Reid vs. Hood & Burdine may well stand with authority. It is not in accordance with the tenor of the New York decisions. I, however, not only acquiesce in that decision, but adopt it as good law. The justice had authority to issue the attachment, and only erred in giving a judgment himself, instead of returning the proceedings to the court for its adjudication. It was an error as to law and not fact. So of the case of *36 Young vs. Herbert, 2 N. & McC. 172, note a, where the justice committed the plaintiff to jail, because he could not give security for the maintenance of a bastard child. The complaint against the justice was, that he had committed an error in law, and for that, he was properly held not to be liable. This can scarcely be the case where the, question of jurisdiction depends on the fact as to where the cause of proceeding arose. It is said, however, that the defendant in the case before the court, may have supposed, from his opinion of the law, that he could have the plaintiff punished in South Carolina, for an assault and battery committed in North Carolina. In other words, he may have conceived it his duty to make an effort to preserve the peace and supervise the public justice of the United States. This is a large view of the subject, not apt to be indulged in but by very few.. I rather suppose that the defendant is the first justice who ever undertook to make culprits of another State liable to the tribunals of the State in which he held his commission. If there had been any ground to believe that he was ignorant as to where the offence was committed, the verdict should have been in his favor; but that fact being brought home to him, he must abide by the consequences. He has committed the fault of one who has taken rather too large a view of his duties. I would have been very sorry to have seen him mulct for too large an amount, for it may be that he was governed by worthy motives, and at most has only been guilty of ostentatiously exhibiting the amplitude of his authority in the pursuit of justice. There is, however, much more safety in adhering to the certainty of strict common law and definite jurisdiction, than to undertake to supervise the more enlarged province of speculative justice. A majority of the court think the instructions below were correct, and, therefore, refuse to interfere with the verdict of the jury.
As it regards the motion to stay the proceedings in this case until the costs of the former action were paid, it may be proper to remark, that no inflexible rule has been acted on in. this State. The general rule is, that where the same matter is brought into controversy more than once by successive actions, the costs of the first action should be paid *37 before the others should be allowed to proceed. To make the rule fair, such motion should be made at as early a period as practicable, to prevent surprise and an unnecessary accumulation of costs. In this case, the course pursued is affirmed.
Evans, Wardlaw and Frost, JJ. concurred.